UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN SAPAN,<br><br>        Plaintiff,<br><br>    v.<br><br>SAFEWAY, INC.,<br><br>        Defendant. | Case No. 24-cv-08804-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 23 |

Before the Court is Defendant Safeway, Inc.'s motion to compel arbitration, or, in the alternative, to dismiss. ECF No. 23. The Court will deny Safeway's motion to compel arbitration but grant Safeway's motion to dismiss.

I.  **BACKGROUND**

On December 6, 2024, Plaintiff Jonathan Sapan filed this class action, accusing Safeway of violating the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 et seq. ("TCPA"). ECF No. 1. Sapan alleges that Safeway sent three texts to his residential phone number over the course of almost two years—on December 8, 2020, June 24, 2021, and September 26, 2022—to solicit its pharmacy goods and services. ECF No. 8 ("FAC") ¶ 15.[1] Sapan specifically alleges that the December 8, 2020 text "was soliciting [f]lu [s]hots" and the June 24, 202[1] and September 26, 2022 texts were "advertising" and "soliciting" COVID shots.[2] *Id*. ¶¶ 22–24. Sapan alleges that these communications violated the TCPA, as his residential phone number has been registered on the National Do Not Call Registry ("DNC Registry") since June 16, 2006. *Id*. ¶ 20. Sapan

---

[1] Paragraph 15 refers to the communications as "calls," but subsequent paragraphs make clear that the communications were text messages. *See, e.g., id.* ¶¶ 16–18.
[2] Sapan attached the text messages as exhibits to his original complaint. *See* ECF Nos. 1-3, 1-4, 1-5.

further alleges that he "never gave S[afeway] or any other person, agent, employee or entity associated with S[afeway] express written permission to text him" and does not "have an established business relationship nor personal relationship with S[afeway] or any other person, agent, employee or entity associated with S[afeway]." *Id.* ¶ 21.

## II.   JURISDICTION

Plaintiff's claims arise under the TCPA, 47 U.S.C. § 227 et seq. The Court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

### A.   Federal Arbitration Act

The Federal Arbitration Act ("FAA") applies to written contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. The parties agree that the FAA governs the contract at issue in this case. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). In determining whether an arbitration agreement exists, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). Thus:

> In considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate was made, a district court should give to the opposing party the benefit of all reasonable doubts and inferences that may arise. Only when there is no genuine issue of material fact concerning the formation of an arbitration agreement should a court decide as a matter of law that the parties did or did not enter into such an agreement.

*Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citations omitted) (cited with approval in *Hansen*, 1 F.4th at 670). If the court "concludes that there are genuine disputes

2

of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Hansen*, 1 F.4th at 672. If a valid arbitration agreement exists, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." *Id*. § 3. "[N]otwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when . . . all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's*, *Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014).

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but the facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting

3

1  *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a
2  defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to
3  relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

4        In determining whether a plaintiff has met the plausibility requirement, a court must
5  "accept all factual allegations in the complaint as true and construe the pleadings in the light most
6  favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). In so doing, "a
7  court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in
8  opposition to a defendant's motion to dismiss." *Schneider v. California Dep't of Corr.,* 151 F.3d
9  1194, 1197 n.1 (9th Cir. 1998) (emphasis omitted). However, the Court "may . . . consider
10 unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the
11 document; (2) the document is central to the plaintiff's claim; and (3) no party questions the
12 authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir.
13 2011) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). Finally, a plaintiff may
14 "plead[] facts alleged upon information and belief where the facts are peculiarly within the
15 possession and control of the defendant or where the belief is based on factual information that
16 makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir.
17 2017) (quoting *Arista Records, LLC v. Doe 3*, 603 F.3d 110, 120 (2d Cir. 2010)).

18 **IV.   DISCUSSION**

19       Safeway argues that Sapan's TCPA claim "fails for two independent reasons: (1) [Sapan]
20 agreed to arbitration, barring him from pursuing this claim in court, and (2) the text messages at
21 issue do not qualify as 'telephone solicitations,' a necessary element of his claim." Mot. at 8.
22 Safeway requests the Court "compel [Sapan] to arbitration, or, in the alternative, dismiss the FAC
23 in its entirety for failure to state a claim."[3]  *Id*.
24 / / /

---

[3] Safeway also asks the Court to strike Sapan's request for injunctive relief, as Sapan does not "allege any continuing violations or any threat of future injury, which is required to demonstrate standing to seek injunctive relief under the TCPA." Mot. at 25 n.5. The Court denies this request. Sapan's request for injunctive relief is not "redundant," "immaterial," "impertinent," or "redundant." *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010).

### A. Motion to Compel Arbitration

Safeway contends that Sapan agreed to arbitration by enrolling in Safeway's texting program and agreeing to Safeway's Terms of Service ("ToS"), which included an arbitration agreement and class action waiver.[4] Mot. at 14. Safeway alleges that Sapan enrolled in the texting program on November 5, 2019 at a point-of-sale ("POS") system in a Safeway store. According to Safeway, customers "could enroll [in] pharmacy-related text messages . . . by [] inputting their phone number at the in-store POS system, where they [were] presented with the following prompt: 'Enter Phone Number for Text Notifications.'" ECF No. 23-1 ("Shockey Decl.") ¶ 12. Once customers input their phone number, they "were required to click the 'Enter' button to proceed with enroll[ment] . . . ." *Id*. ¶ 13. "After clicking 'Enter,' customers would receive a confirmation text message at the phone number provided, confirming their enrollment to receive pharmacy-related text messages through mscripts' texting platform." *Id*. ¶ 14. "The confirmation text message, which was sent from short code 25374, stated 'Safeway Rx: Thank you [Plaintiff] for enrolling in text reminders and health msgs. Terms at http://mrx.bz/swt. Reply STOP to cancel, HELP for help. Msg&data rates may apply.'" *Id*. ¶ 15. "The ToS hyperlink in the confirmation text message was set in a blue, underlined font[,]" and the "rest of the confirmation text message was set in a black, regular font." *Id*. ¶ 16. "Clicking on the hyperlink would direct a user to the website address https://safeway.mxterms.com/tos, which displayed the ToS in full." *Id*. ¶ 17. Safeway, relying on the declaration of Peter Towle, contends that Sapan completed each of these steps and received the confirmation text message. Mot. at 13; *see also* ECF No. 23-2. Safeway argues that "[t]he display of Safeway's ToS in the enrollment confirmation text message provided [Sapan] with reasonably conspicuous notice of the ToS[,]" and Sapan's "continued use of the [t]exting [p]rogram after being presented with the ToS and given an opportunity to opt out constitutes acceptance of the ToS." Mot. at 15–16.

Sapan disputes that he enrolled in Safeway's texting program. Sapan argues that he "did not agree to receive any text messages from Safeway on November 5, 2019 nor any other date or

---

[4] Safeway provided its text messaging services "through contracts with a third-party vendor, mscripts." Mot. at 11.

5

time" and "do[es] not recall making any purchase on November 5, 2019[.]" ECF No. 25-2 ¶¶ 4, 8. Sapan represents that he "checked [his] purchase records and s[aw] no record of any purchase on that date from Safeway or any other pharmacy." *Id*. ¶ 8. Sapan further represents that he did not "receive[] any notice of any arbitration clause, or any other terms of service on November 5, 2019" and that he has no knowledge of or familiarity with the email address associated with his alleged registration. *Id*. ¶¶ 9, 12. Sapan argues in the alternative that the arbitration agreement is unconscionable. ECF No. 25 ("Opp.") at 5–13.

### 1. Admissibility of Peter Towle's Declaration

As a preliminary matter, the Court must determine whether the declaration of Peter Towle is admissible. ECF No. 23-2 ("Towle Decl."). Towle is a "Director of Product Management with Outcomes f/k/a mScripts, LLC []." ECF No. 23-2 ¶ 2. He states that "mscripts' records show that on November 5, 2019, at approximately 9:32 a.m., [Sapan] enrolled in the mscripts texting services[,]" and "when Plaintiff enrolled in texting services, he was presented with Terms of Services through a hyperlink that was in a text message to the following webpage: http://safeway.mxterms.com/tos."[5] *Id*. ¶¶ 7–12. Sapan objects to the Towle Declaration as hearsay.[6] ECF No. 25-1 at 2. Safeway counters that the Towle Declaration is business record exception to hearsay. ECF No. 27 at 14.

Under Federal Rule of Evidence 803(6), a business record is admissible if: (1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge;" (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" (3) "making the record was a regular practice of that activity;" (4) "all these conditions are shown by the testimony of the custodian or another qualified witness . . . ;" and (5) "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6). Although Towle states that the mscripts' records were "stored in the

---

[5] Towle attaches the mscripts' records to his declaration as Exhibit A. ECF No. 23-2 at 5.
[6] Sapan also argues that the Towle Declaration should be excluded because Towle is not an mscripts representative, but the Towle Declaration plainly states that Towle is an employee of mscripts' successor, Outcomes. ECF No. 23-2 ¶ 2.

6

ordinary course of business[,]" he does not represent that the records were "made at or near the time by—or from information transmitted by—someone with knowledge" or that "making the record was a regular practice of [the regularly conducted business activity]." ECF No. 23-2 ¶ 4. Accordingly, Safeway has not shown that the Towle Declaration, or the accompanying mscripts' records, are business record exceptions to the rule against hearsay. The Court sustains Sapan's objection and will not consider Towle's declaration.[7]

### 2.     Existence of an Arbitration Agreement

"In determining whether [] parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "To form a contract under . . . California law, the parties must manifest their mutual assent to the terms of the agreement." *Id*. "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Id*. "However, '[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id*. (citation omitted). "These elemental principles of contract formation apply with equal force to contracts formed online." *Id*. The Ninth Circuit has instructed that, in the context of online agreements, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id*.

As an initial matter, the parties dispute whether Sapan enrolled in Safeway's texting program and received a confirmation text message containing a hyperlink to Safeway's ToS. This alone warrants denial of Safeway's motion to compel arbitration. *See Tu v. Experian Info. Sols., Inc.*, No. 24-CV-1221-WQH-MSB, 2025 WL 1134612, at *9 (S.D. Cal. Apr. 16, 2025) ("The

---

[7] Even if the Court were to consider the declaration of Peter Towle, Safeway's motion to compel arbitration would be denied based on Sapan's lack of consent to Safeway's ToS. *See supra* Section IV.A.2.

7

Court accordingly concludes that, based upon the current record, a genuine dispute of material fact exists as to whether [p]laintiff enrolled in CreditWorks and thus encountered the webforms described in Smith's declaration. As a result, a genuine dispute of material fact exists as to whether [p]laintiff and [defendant] entered into an agreement to arbitrate, rendering the [c]ourt unable to resolve the [m]otion to [c]ompel [a]rbitration at this stage of the proceedings.").

However, even if Sapan did enroll in Safeway's texting program and receive the confirmation text message containing a hyperlink to Safeway's ToS, the Court is not persuaded that Sapan's continued use of the texting program constitutes assent to Safeway's ToS. In fact, Safeway's argument appears to have been rejected by the Ninth Circuit in *Platt v, Sodexo*, No. 23-55737, 2025 WL 2203415, at *5 (9th Cir. Aug. 4, 2025). In *Platt*, the plaintiff sued their employer for alleged violations of the Employee Retirement Income Security Act ("ERISA"). *Id*. at *1. In moving to compel arbitration, the defendant argued that it had modified employees' health insurance plan to add an arbitration provision, emailed all plan participations to inform them of the modification, and plaintiff therefore agreed to arbitrate any ERISA claims through his "continued participation in the [p]lan . . . ."[8] *Id*. at *5. The Ninth Circuit found that "[e]ven if [plaintiff] received the . . . email [informing plan participants of the modification], he still did not receive sufficient notice to establish consent." *Id*. The court explained that the defendant "never 'prompt[ed] [the plaintiff] to take an affirmative action to demonstrate assent[,]'" and further noted that the email informing plan participants of the arbitration provision "failed to explicitly state that [] continued participation in the [p]lan would constitute consent to the arbitration agreement." *Id*.

Here, too, Sapan was not required to "take an affirmative action to demonstrate assent." *Id*.; *see also Singh v. Adobe Inc.*, No. 3:24-CV-03980-JSC, 2025 WL 2197142, at *5 (N.D. Cal. Aug. 1, 2025) ("Unambiguous manifestation of assent occurs only where an internet user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an

---

[8] The plaintiff enrolled in his health insurance plan in 2016, but in 2021, the defendant "unilaterally amended the [insurance] [p]lan's governing document to add an arbitration provision."

8

1    agreement.") (quotations and citation omitted); *Berman*, 30 F.4th at 856 ("Courts are more reluctant to enforce browsewrap agreements [in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website] because consumers are frequently left unaware that contractual terms were even offered, much less that continued use of the website will be deemed to manifest acceptance of those terms."). Additionally, Safeway's ToS did not "explicitly state" that continued participation in the texting program would "constitute consent to the arbitration agreement."[9] *Platt*, 2025 WL 2203415, at *5. *Cf. Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 898 (N.D. Cal. 2020) (finding the parties formed a valid arbitration agreement where the defendant's terms of service expressly stated that "continued use and payment for [defendant's] services constituted acceptance of [defendant's] updated agreement"); *Gentry v. Superior Ct.*, 42 Cal. 4th 443, 468, 165 P.3d 556, 572 (2007) (finding plaintiff manifested assent to arbitration agreement where plaintiff "signed an easily readable, one-page form" expressly stating that if plaintiff did not mail the arbitration opt-out form within 30 calendar days, plaintiff "w[ould] be required to arbitrate all employment-related legal disputes"). Safeway cannot show that Sapan unambiguously manifested assent to Safeway's ToS. Accordingly, the Court denies Safeway's motion to compel arbitration.

### B.    Motion to Dismiss

"The TCPA gives consumers 'who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the[se] regulations' a private right of action." *Greene v. Select Funding, LLC*, No. 2:20-CV-07333-RGK-KS, 2021 WL 4926495, at *4 (C.D. Cal. Feb. 5, 2021) (quoting *Jones v. Royal Admin. Services, Inc.*, 887 F.3d 443, 448 (9th Cir. 2018)). Sapan alleges that Safeway texted him "at least twice during a calendar year"—on December 8, 2020 and June 24, 2021—in violation of the TCPA. FAC ¶ 68; *see also id.* ¶ 15. Safeway argues that Sapan "did not receive more than one violative text message within

---

[9] Although Safeway's ToS stated "[y]ou agree that the electronic text of this Agreement constitutes writing and your assent to the terms and conditions hereof constitutes a 'signing' for all purposes[,]" the ToS did not state that continued use of the texting program or failure to opt out of the texting program would constitute assent to the ToS. ECF No. 23-1 at 13.

9

1    a calendar year," as neither the December 8, 2020 text message regarding flu shots nor the June

2    24, 2021 text message regarding COVID shots are "solicitations" under the TCPA.[10]  Mot. at 20,

3    22–25.  The Court first addresses the June 24, 2021 text message.

### 1. The COVID Text Message

On June 24, 2021, Safeway sent Sapan the following text message:

> Safeway Pharmacy Rx: COVID-19 vaccines are here. Adults & Kids 12+ are eligible via walk-in or schedule appt http://mrx.bz/cvvsw DO NOT REPLY

ECF No. 1-5.  Safeway argues that this text message is not actionable, because "messages related to preventative measures taken during the COVID-19 pandemic, such as the availability of vaccines, are not solicitations, telemarketing, or advertisements."  Mot. at 22.  Sapan counters that this text message is a solicitation, as it "clearly advertise[s] Safeway's shots to encourage a new sale and even encourage the recipient to 'walk-in or schedule appt' via a hyperlink to Safeway."  Opp. at 16.  The Court agrees with Safeway.

On March 20, 2020, the Federal Communications Commission ("FCC") issued a declaratory ruling that concluded "the COVID-19 pandemic [was] an imminent health risk, and that the TCPA d[id] not prohibit health care providers from making informational calls . . . directly related to the pandemic's health risks to the public[.]"[11]  *Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254, 1258 (W.D. Wash. 2021) (quoting *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 35 FCC Rcd. 2840 (2020)).  The FCC specifically stated that "informational" calls, "made necessary because of the COVID-19 outbreak, and directly related to the imminent health or safety risk arising out of the COVID-19 outbreak" fell under the TCPA's "emergency purposes" exception.  *In Re Rules and Regulations*

---

[10] The Court does not address whether the September 26, 2022 text message is actionable, as it could not have been a second text within a 12-month period.

[11] On March 13, 2020 the President declared COVID-19 a national emergency.  The national emergency declaration remained in effect at the time Safeway sent the text message to Sapan on June 24, 2021.  *See Horton v. Tarrant Cnty. Hosp. Dist.*, No. 4:22-CV-9-P, 2022 WL 702536, at *2 (N.D. Tex. Feb. 4, 2022), *report and recommendation adopted*, No. 4:22-CV-0009-P, 2022 WL 620950 (N.D. Tex. Mar. 3, 2022).

10

*Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 35 FCC Rcd. 2840 (2020) ¶¶ 6–7.

Few courts have considered the application of this exception. However, the limited authority that exists suggests that Safeway's June 24, 2021 text message falls under the emergency purposes exception. For example, in *Gabertan v. Walmart*, the plaintiff alleged that he received a text message from Walmart in violation of the TCPA. 523 F.Supp.3d at 1256. The text message stated: "WalmartRx – Are you 60+, high-risk, self-quarantining, or have COVID-19 symptoms? Use curbside pickup or have your Rx mailed. More info https://bit.ly/wmpharm." *Id*. Walmart argued that this text fell "within the TCPA's emergency purpose exception, as emphasized by the FCC's March 20, 2020 [d]eclaratory [r]uling." *Id*. at 1259. The plaintiff responded that Walmart's text message "was facially an advertisement" that fell outside the FCC's emergency purposes exception. *Id*. The court agreed with Walmart, explaining that Walmart, a health care provider, was merely "providing information to its customer about safe access to prescription medications during the pandemic." *Id*. The court found that the "sole purpose [of Walmart's text message] was to provide information to its customer about the pandemic and its health and safety risks, and how to mitigate those risks, and was not an advertisement." *Id*. at 1261.

Here, too, the June 24, 2021 text message appears to fall within the emergency purposes exception. Safeway is a health care provider, and the purpose of its June 24, 2021 text message was to inform Sapan that COVID-19 vaccines were available to eligible individuals. Texts regarding access to COVID-19 vaccines clearly fall within the FCC's emergency purposes exception. *See Gabertan*, 523 F. Supp. 3d at 1261 ("Curbside pick-up and mailing prescriptions—contactless access to prescriptions as part of an effort to mitigate the pandemic's health risks—are facially, squarely within the emergency exception as articulated in the Rulin*g*."); *see also Horton*, 2022 WL 702536, at *2 (finding "text issued to [p]laintiff that 'let [him] know that everyone ... is eligible for the free COVID vaccine' [was] made to affect the health and safety of its recipients– here, [p]laintiff – and inform its recipients of the availability of, and eligibility for, the COVID-19 vaccination" and was therefore exempt from the TCPA). The Court finds that the June 24, 2021 text message is subject to the emergency purposes exception. Accordingly, Sapan has failed to

allege that Safeway sent more than one violative text message in a calendar year. The Court therefore grants Safeway's motion to dismiss. *See Greene*, 2021 WL 4926495, at *5 (dismissing TCPA claim where plaintiff only alleged one telephone solicitation).

### 2. Leave to Amend

Safeway requests the Court dismiss Sapan's complaint with prejudice. Mot. at 26. Although the Court finds the June 24, 2021 text message "is exempt from the reach of the TCPA[] as a matter of law," *Gabertan*, 523 F. Supp. 3d at 1261, Sapan may be able to set forth another set of facts to support a TCPA claim. Accordingly, the Court will grant Sapan one opportunity to amend his complaint.

## CONCLUSION

For the foregoing reasons, Safeway's motion to compel arbitration is denied and Safeway's motion to dismiss is granted. Any amended complaint must be filed within 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated: August 29, 2025

_____
JON S. TIGAR
United States District Judge

12